# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON THOMPSON,<br><br>    Plaintiff,<br><br>    v.<br><br>BUREAU OF PRISONS, *et al.*,<br><br>    Defendants. | Civil Action No. 15-1190 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Jason Thompson brings this lawsuit against the Bureau of Prisons and various correctional officers and administrators. He alleges that at the Federal Correctional Institution in Bennettsville, South Carolina, where he was previously incarcerated, officers failed to provide him with the process he was due at a disciplinary hearing, which resulted in, among other things, a loss of good-time credits. Although he styled his action as a civil-rights claim under 42 U.S.C. § 1983, Defendants contend it is more properly considered a petition for habeas corpus. The Court concurs, but because Thompson was incarcerated at United States Penitentiary Lee in Jonesville, Virginia, when he filed this action, his suit cannot be maintained in this district. Rather than dismiss the case, the Court will transfer it to the appropriate venue – *viz.*, the Western District of Virginia. There, Defendants are free to raise the array of merits defenses that they sought to proffer to this Court.

## I.  Background

According to Thompson, on July 13, 2014, while he was housed at FCI Bennettsville, he received an incident report charging him with various disciplinary infractions, including

1

"[r]efusing to breath[e] into a breathalyzer" and "[t]hreatening another with bodily harm." ECF No. 1 (Complaint) at 6 (Statement of Claims). The following day he appeared before the prison's disciplinary committee and was advised of his rights related to those charges. Id.; Opp. at 1. Specifically, Thompson alleges that he was told, "You may request the staff representative of your choice" at the hearing before the Discipline Hearing Officer (DHO) "so long as that person was not a victim, witness, investigator, or otherwise significantly involved it [*sic*] the incident." Compl. at 6. Thompson requested that Lieutenant "N. Bates" serve as his representative. Id.

On July 21, Lieutenant Bates came to the Special Housing Unit, where Plaintiff was then held, and informed him that he "had no desire to assist inmates at DHO hearings." Id. Later that day, Thompson was brought to his hearing, which was presided over by DHO "E. Negron-Oliver" – a Defendant in this case – who was not physically present but "appeared via camera." Opp. at 1; see also Compl. at 7. Plaintiff informed Negron-Oliver that his requested staff representative was not present, but he was nonetheless "forced to proceed without staff representation against [his] objections." Compl. at 7; see also Opp. at 1 (stating that DHO "informed [Thompson] that she would not conduct such hearing without [his] requested staff representative and then went on to do so, without my staff representative present"). At the hearing, he was found guilty of two disciplinary violations and sentenced to 45 days of disciplinary segregation, 6 months of commissary and telephone restrictions, 3 months of email restrictions, and – critical for this suit – "68 days loss of good conduct time." Id.

Thompson believes this proceeding before the DHO violated his due-process rights in multiple ways, including the deprivation of a staff representative to assist him and the failure to provide him with a report of the hearing. See id. at 7-8 (citing BOP rules set forth in Program

Statement 541.8). Shortly after the hearing, Thompson filed a grievance detailing his procedural objections. See id. at 12 (July 24, 2014, Grievance Form). Although he does not directly mention it in his Complaint, Plaintiff's Opposition reveals that, a few days later, he was afforded a re-hearing on his disciplinary infractions. See Opp. at 2-3. Thompson maintains, however, that the re-hearing was also procedurally deficient; he complains that his due-process rights were violated because he did not receive 24 hours' advance notice of the hearing and did not have an opportunity to request a representative of his choosing. See id. at 2. He ultimately refused to participate in the hearing and was returned to his cell. Id. at 3; see also id. at 18 (July 30, 2014, Hearing Report) (noting that Plaintiff was "insolent and belligerent" and asked to be returned to his cell despite being "informed that the hearing would continue in [his] absence since [he was] refusing to attend"). In his absence, Plaintiff was again found guilty of the two disciplinary infractions and again received the same sanctions. Id. at 19.

Plaintiff next filed various administrative appeals of the DHO's decision. See, e.g., id. at 23 ("Regional Administrative Remedy Appeal"). On February 3, 2015, he was transferred to USP Lee in Jonesville, Virginia, see id. at 27, and on July 23, 2015, he filed this lawsuit against the U.S. Bureau of Prisons, three unnamed Administrative Remedy Coordinators, and DHOs E. Negron-Oliver and Lee Green. See Compl. at 1-2. At some point during the pendency of this suit, Plaintiff was again transferred, this time to USP Lompoc in Lompoc, California, where he is currently housed. See Opp. at 6. In his Complaint, he requests that the sanctions imposed by the DHO be vacated, that the incident report be expunged from his record, and that his court filing fee be reimbursed by Defendants. See Compl. at 9. He later moved to amend his Complaint to seek additional relief – namely, $5,000 in punitive damages from each Defendant. See ECF No. 9; Minute Order of September 11, 2015 (granting Plaintiff's Motion to Amend).

Defendants now move to transfer or, in the alternative, dismiss the suit. See ECF No. 16 (Mot.). They first argue that because Plaintiff's case falls under the federal habeas statute, this federal court in the District of Columbia does not have jurisdiction over it. See id. at 1-2. They maintain, alternatively, that the Court should dismiss the suit on the ground of sovereign immunity. See id. Finally, they contend that Plaintiff's failure to properly exhaust his administrative remedies prevents him from stating a claim for relief. Id. at 19. Because the Court finds for Defendants on their first theory, it will not address the legal standard or merits of the remaining defenses.

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving that the Court has jurisdiction to hear his claims. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the

4

complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction. . . ." Jerome Stevens Pharm., 402 F.3d at 1253.

Should the Court find that jurisdiction is lacking, transfer may be appropriate. "Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631; see also 28 U.S.C. 1406(a) ("A district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

## III. Analysis

Defendants' principal argument is that Plaintiff's Complaint sounds in habeas because it raises questions about the fact or duration of his incarceration; consequently, they contend, the only court that could have jurisdiction over the suit is the district in which he lived at the time of filing – namely, the Western District of Virginia. See Mot. at 6. Plaintiff, on the other hand, believes that his case is a § 1983 action and thus properly belongs in this district. The Court first explains why transfer would be necessary if Plaintiff's suit is properly characterized as a habeas petition and then addresses whether it is, in fact, such a petition.

5

A. Jurisdiction Over Habeas Petitions

An individual who is "in custody in violation of the Constitution or laws or treaties of the United States" may petition for a writ of habeas corpus. See 28 U.S.C. § 2241(c)(3). However, "[b]ecause a writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in custody, a court may issue the writ only if it has jurisdiction over that person." Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1237-38 (D.C. Cir. 2004) (quotation marks and alterations omitted) (citing Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484, 494 (1973)). This jurisdictional restriction is often referred to as the "immediate custodian" rule. See id.; see also Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004) ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner] . . . . . [Its] provisions contemplate a proceeding against some person who has the immediate custody of the party detained.") (citing 28 U.S.C. § 2242 and Wales v. Whitney, 114 U.S. 564, 574 (1885)).

Plaintiff asserts that although the Defendants who allegedly violated his rights did so in "many different jurisdictions," this Court may exercise jurisdiction over his suit because his administrative appeals were denied by the "Administrative Remedy Coordinator for the Central Office which is located in Washington, DC." Opp. at 6. This, however, is not the standard by which jurisdiction over habeas petitions is determined. See Stokes, 374 F.3d at 1238. "The proper respondent in a habeas corpus action is the warden of the facility where the plaintiff currently is incarcerated." Head v. Fed. Bureau of Prisons, 86 F. Supp. 3d 1, 5 (D.D.C. 2015); see also Smith v. U.S. Bureau of Prisons, 971 F. Supp. 2d 99, 102 (D.D.C. 2013) ("[W]hile the petitioner has named the United States Bureau of Prisons as the respondent, the correct respondent to a habeas petition is the warden where the prisoner is located.").

6

A slight caveat to this rule, however, is that "[i]f a prisoner is transferred during the course of the litigation, 'habeas jurisdiction as a general matter continues to be in the district where the prisoner was incarcerated at the time the habeas petition was filed.'" Simpson v. Ashcroft, 321 F. Supp. 2d 13, 15 (D.D.C. 2004) (quoting Blair–Bey v. Quick, 151 F.3d 1036, 1039 n.1 (D.C. Cir.1998)); see also Chatman-Bey v. Thornburgh, 864 F.2d 804, 806 (D.C. Cir. 1988) (*en banc*) (holding that prisoner who was incarcerated in Pennsylvania when he improperly filed his habeas petition in District of Columbia but was later transferred to Virginia should have filed suit in Middle District of Pennsylvania).

While Thompson is presently incarcerated at USP Lompoc, located in Lompoc, California, at the time that he filed this lawsuit, he was held at USP Lee in Jonesville, Virginia. This means that if the Court should determine that Plaintiff's suit is properly characterized as a habeas petition, it would transfer the matter to the Western District of Virginia. See Void-El v. O'Brien, 811 F. Supp. 2d 255, 260 (D.D.C. 2011) (where Plaintiff "is not confined in the District of Columbia" and "[a]lthough it is not styled as such, [his] claim is in actuality one that should have been brought in a habeas corpus petition," District Court for D.C. may not exercise jurisdiction over claim). The sole question that remains, then, is whether Plaintiff's suit sounds in habeas.

### B. Classification of Suit

"The essence of modern habeas corpus is to safeguard the individual against unlawful custody. . . . or detention . . . . Its function is to test the power of the state to deprive an individual of liberty in the most elemental sense." Chatman-Bey, 864 F.2d at 806. Any "challenge to the fact or duration of [a prisoner's] confinement," as opposed to "the conditions of his prison life," must be brought in habeas. See Preiser v. Rodriguez, 411 U.S. 475, 498-99

7

(1973). At the same time, "[h]abeas is broad," and the federal habeas statute "does not deny the federal courts power to fashion appropriate relief other than immediate release." Chatman-Bey, 864 F.2d at 807 (quotation marks omitted) (citing Peyton v. Rowe, 391 U.S. 54, 66 (1968)). For instance, "[c]onsistent with its broad vision of habeas corpus, the Supreme Court has expressly sanctioned the invocation of habeas where the injury in question is, among other things, a prejudicing of one's right to be considered for parole" or early release. Id. In other words, if the relief a plaintiff seeks is "a speedier release from [his] imprisonment, his sole federal remedy is a writ of habeas corpus," even if his contentions have nothing to do with his original criminal conviction or sentencing. Preiser, 411 U.S. at 500; see also Muhammad v. Close, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.").

In Preiser, the Supreme Court held that inmates seeking injunctive relief to compel restoration of good-time credits could not bring suit under 42 U.S.C. § 1983. See 411 U.S. at 487 ("Even if the restoration of [those] credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been their appropriate remedy."). The D.C. Circuit has subsequently underscored that "habeas is the exclusive remedy for a federal prisoner bringing any claim that would have [even] a probabilistic impact upon the duration of his custody." Bourke v. Hawk-Sawyer, 269 F.3d 1072, 1074 (D.C. Cir. 2001) (quotation marks and citation omitted).

Preiser and its progeny make this case an easy one. Thompson, like Preiser, seeks to compel restoration of good-time credits, which he believes were unlawfully rescinded by the DHO's failure to provide appropriate procedural protection. See Compl. at 9 ("Relief: . . . [O]rder the DHO hearing(s) decisions . . . expunged."). As the relief Thompson seeks would

8

unquestionably have at least a "probabilistic impact" on the duration of his custody, habeas is the necessary vehicle.

The Supreme Court addressed a situation closely analogous to Thompson's in <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997). There, it extended <u>Preiser</u> to a case in which a prisoner sought to challenge the procedures employed in a disciplinary hearing, the outcome of which was a revocation of his good-time credits. Because judgment in the prisoner's favor would necessarily invalidate the revocation, the Court determined that the case was cognizable only in habeas – not under § 1983, as the plaintiff had styled it – even if he had not explicitly requested as relief the restoration of good-time credits. <u>Id.</u> at 643. In fact, the Court held that the action lay only in habeas even where the prisoner admitted that after a procedurally sufficient disciplinary hearing, revocation of <u>some</u> good-time credits might actually be an appropriate sanction. Even under such a posture, the Court maintained, judgment for the prisoner would still invalidate the sentence-lengthening sanction already imposed. <u>Id.</u> at 647-48. The prisoner's position in <u>Balisok</u> was, therefore, substantially similar to Thompson's, and the same result as <u>Preiser</u> obtained.

Plaintiff, perhaps recognizing that these pellucid pronouncements foreclose success under § 1983, later amended his Complaint to add additional relief. <u>See</u> Motion to Amend Complaint at 1 (asking Court to allow him to amend "requested relief to add: $5,000.00 in Punitive Damages by each named defendant"). But the <u>Balisok</u> Court addressed this variation on the <u>Preiser</u> theme as well. <u>See</u> 520 U.S. at 643 (holding that suit was cognizable only in habeas even though relief plaintiff requested was "a declaration that the procedures employed by state officials violated due process, compensatory and punitive damages for use of the unconstitutional procedures, an injunction to prevent future violations, and any other relief the

court deems just and equitable"). Balisok thus forecloses the gambit of tacking a request for damages onto what is fundamentally a habeas petition in order to remove it from the ambit of Preiser.

There is one last wrinkle here: what should happen to a complaint where monetary damages are requested both for the loss of good-time credits and for other alleged injuries? Plaintiff's Complaint, as amended, arguably presents such a situation. The sanctions he challenges included commissary, email, and telephone restrictions in addition to disciplinary segregation, see Compl. at 7, and his cursory Motion to Amend does not specify that his damages request is related to any particular injury. See Motion to Amend at 1. Fortunately, the D.C. Circuit has provided guidance for these hybrid cases complaining of revocation of good-time credits but simultaneously seeking monetary damages for other harms as well. In Skinner v. U.S. Dep't of Justice, 584 F.3d 1093 (D.C. Cir. 2009), an inmate challenged the legitimacy of a disciplinary hearing that had resulted in an array of sanctions much like those Thompson received – *i.e.*, loss of good-time credits, disciplinary segregation, and denial of visitation rights and commissary privileges. See id. at 1094-95. The plaintiff in Skinner argued that "even if his claim for damages for loss of good time must first proceed in habeas, the same is not true of his claims for damages for other, separate disciplinary harms." Id. at 1099 (quotation marks and citation omitted). The D.C. Circuit, however, did not agree. Because all of the disciplinary injuries were incurred as a result of the same hearing – just as here – a judgment in the plaintiff's favor would require the conclusion that the hearing was deficient and "would 'necessarily imply the invalidity of the deprivation of his good-time credits' as well." Id. at 1100 (quoting Balisok, 520 U.S. at 646-47). Skinner thus directly answers in the negative the question of whether

10

Plaintiff's ambiguous amendment to his Complaint allows him to do an end-run around the Preiser restriction.

Notwithstanding Plaintiff's attempts to recast his suit as a civil-rights claim, therefore, he cannot avoid the conclusion that it is, in essence, a petition for the writ of habeas corpus. Because Thompson was incarcerated in Virginia when he filed, that is where jurisdiction lies. See Thomas v. Fulwood, No. 14-1342, 2015 WL 5331947, at *3 (D.D.C. Sept. 14, 2015) (concluding that only a federal district court in South Carolina, where plaintiff was incarcerated, could entertain jurisdiction over his suit, because his claim that Parole Commission relied on erroneous information in departing from guidelines to deny parole was properly characterized as habeas claim); Head v. Fed. Bureau of Prisons, 86 F. Supp. 3d 1, 5 (D.D.C. 2015) (noting that "if the plaintiff were successful in obtaining an award of good time credit, his release from imprisonment would likely occur sooner," so plaintiff "must first proceed in habeas," and concluding that because plaintiff was "not detained in this district," the court did not enjoy jurisdiction over his suit).

Under 28 U.S.C. § 1631, "when a court concludes that it lacks jurisdiction, it has the authority to dismiss the action or transfer it in the interest of justice." Smith, 971 F. Supp. 2d at 102 (finding it "in the interest of justice and judicial economy to transfer the case to the Central District of California," where immediate custodian of habeas petitioner was located). "Courts have found that transfer is 'in the interest of justice' when, for example, the original action was misfiled by a *pro se* plaintiff or by a plaintiff who, in good faith, misinterpreted a complex or novel jurisdictional provision," Bethea v. Holder, 82 F. Supp. 3d 362, 366 (D.D.C. 2015); here, Plaintiff is both *pro se* and faced with a complicated jurisdictional restriction. The Court,

11

accordingly, finds it in the interests of justice to transfer the case to the Western District of Virginia, where jurisdiction is proper.

## IV.     Conclusion

For the foregoing reasons, the Court will grant in part Defendants' Motions to Dismiss and transfer the case to the U.S. District Court for the Western District of Virginia. A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: April 4, 2016